UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                    :
  JAHMON J. COX,                                    :
                                                    :
                              Plaintiff,            :      **MEMORANDUM DECISION AND**
                                                    :      **ORDER**
                  - against -                       :
                                                    :      25-cv-5069 (BMC)
  CREDIT ACCEPTANCE CORPORATION,                    :
                                                    :
                              Defendant.            :
                                                    :
------------------------------------------------------------ X

**COGAN**, District Judge.

       Plaintiff Jahmon Cox brings this action against defendant Credit Acceptance Corporation

for alleged negligent and willful violations of § 1681s-2(b) of the Fair Credit Reporting Act

("FCRA").  Before the Court are the parties' cross-motions for summary judgment.  Because the

Court finds that defendant's investigation of plaintiff's dispute was reasonable as a matter of law,

defendant's motion is granted and plaintiff's motion is denied.

                                    **BACKGROUND**

       On December 10, 2019, defendant accepted assignment of a retail installment contract

executed between Queens Auto Mall Inc. as seller and "Jahmon J Cox" as buyer of a 2017 Ford

Fusion.  Defendant then opened an account in plaintiff's name under account number

9687XXXX ("the account").  Defendant received the first two account payments on January 27,

2020, and February 21, 2020, and received no further payments.  Plaintiff denies executing the

contract, denies ever possessing the car, denies making the January and February 2020 payments,

and denies knowing about the account until he discovered it on his credit report in February

2025.

The documentary record belies plaintiff's claim that he did not know about the account until February 2025.[1]  Between June 21, 2020, and May 15, 2023, defendant received several indirect dispute notices relating to the account from the CRAs via Automated Credit Dispute Verification ("ACDV").  Plaintiff admits to having submitted those disputes.  In each dispute, plaintiff claimed identity theft or fraud.  However, he never provided the CRAs (and thus, defendant) with any documentation substantiating his claims and, each time, defendant's investigation revealed no identity theft or fraud.[2]

The ACDV responses that defendant submitted to the CRAs between July 9, 2020, and June 1, 2023 all verify the account information and generally reflect that no identity theft or fraud was found.  Notwithstanding, defendant did communicate a couple discrepancies to the CRAs in its 2020 and 2023 ACDV responses, specifically: (1) three of the ACDV responses noted that plaintiff's address in defendant's summary account record was different from the address that plaintiff provided in connection with his disputes; and (2) two of the ACDV responses noted that plaintiff's date of birth in defendant's summary account record was different (a day off) from the date of birth that plaintiff provided in connection with his disputes.[3]

---

[1] It appears that perhaps plaintiff did not give his lawyer the complete history of his interactions with the credit reporting agencies ("CRAs") on this account before filing his lawsuit.

[2] In response to this fact in defendant's 56.1 statement, plaintiff denies that defendant ever contacted him to request additional information or documentation and denies that defendant conducted a proper investigation.  This is not a proper denial, as it does not "specifically controvert[]" defendant's fact.  See Local Rule 56.1(c).  The Court deems admitted all of defendant's statements of fact to which plaintiff responds with inapposite facts, argument, or legal conclusions.  See DHIP, LLC v. Fifth Third Bank, No. 19-cv-2087, 2021 WL 4481118, at *1 n.2 (S.D.N.Y. Sept. 30, 2021) (disregarding plaintiff's 56.1 responses which were "not about the facts themselves, but rather [took] issue with the implications or characterizations of said facts" and "add[ed] in facts unrelated to those raised by [d]efendants").

[3] Plaintiff may have caused the birthdate mix-up in defendant's records, as plaintiff entered his date of birth as XX-16-XXXX in his September 2021 dispute, instead of the correct XX-17-XXXX.

Plaintiff's seventh dispute from June 2025 is the focus of this lawsuit.  On July 5, 2025, defendant received the associated indirect dispute notice from Equifax, which stated, "Claims true identity fraud, account fraudulently opened.  Provide or confirm complete ID."  Plaintiff's dispute package included a dispute letter, an FTC identity theft report dated June 5, 2025, copies of his New York State driver's license, Social Security card, and health insurance card, and a three Bureau Credit Report.  The dispute letter stated the following:

> Recently I obtained a copy of my credit report and discovered I have been a victim of identity theft as there is an auto loan that I do not recognize.
>
> CREDIT ACPT, Account Number 9687***.  This is not my account and never has been.
>
> Please investigate this issue and remove the incorrect information from my credit report.  I have enclosed copies of my personal identification, proof of address, Social Security Card, and Identity Theft Report.

 Further, the attached FTC identity theft report stated the following:

> A couple of years ago, I tried to apply for two car loans through a dealership in New York I never got any response from them, nor I have a car but later on, I started receiving notifications about an account I did not recognize I did not think much of it at first but later this year on February 10, 2025, I tried applying again and was denied That is when I realized something was seriously wrong

Defendant's employee, Eloisa Camacho Shoup (Specialist, Escalated Customer Support, Credit Rating Department), was assigned to investigate this dispute.  She first confirmed that the first name, last name, middle initial, and Social Security number appearing on the account origination documents matched the information provided by plaintiff in connection with the dispute.  She flagged in the ACDV response that the date of birth appearing in defendant's summary account record was one day off the date of birth that plaintiff provided in connection with his dispute.  However, Shoup's review of the origination documents showed that plaintiff's correct date of birth was provided at the time that the account was opened.  Shoup's review of the origination documents also revealed that: (1) the title application contained the same driver's

3

license number as plaintiff's current driver's license and a traditional "wet ink" signature that appeared very similar to the signature on plaintiff's Social Security card; (2) the "Declaration Acknowledging Electronic Signature Process" contained a traditional "wet ink" signature that appeared very similar to the signature on plaintiff's Social Security card; and (3) an ADP pay stub submitted at origination bore plaintiff's name and used the same address as the other origination documents.  Lastly, Shoup remarked that the first two payments on the account were timely made, and that plaintiff had claimed identity theft and fraud on several prior occasions but had never provided any documentation substantiating his claims.

On July 18, 2025, thirteen days after defendant received plaintiff's dispute, Shoup submitted an ACDV response to Equifax verifying the account information as accurate.  She did not add a "Compliance Condition Code" or other notation to indicate that plaintiff disputed the account.  An August 6, 2025 credit report showed the account as "Open" and "Late 110 days" with a balance of $33,388.  The "Comments" section contained no notation that the account was in dispute.

On August 18, 2025, Shoup called plaintiff and asked him to send her exemplary signature samples, additional copies of his government-issued identification and Social Security card, and an identity theft report or police report.  Plaintiff provided the requested documents by email that day and included a new FTC identity theft report.  In that report, he stated the following:

> i won a lawsuit and the money was taken for a lien for cars i dont know about and i dont own.  i was arrested for insurance lapse and i dont have insurance because i dont own a car, my permit was revoked.  a licensed was obtained online in my name workout my knowledge.

Shoup escalated the matter to her supervisor, Brittany Apacanis (Supervisor, Escalated Customer Support, Credit Reporting) by email.  Among other things, Shoup explained:

4

> This signature looks like it matches however there are no previous calls to compare with the disputer's voice and no ID to review in app xtender.  He did make a payment even though he was claiming ID Theft per the notes so just want to be thorough before I let him know this is not fraud if it truly isn't.  We have not been able to pick up the vehicle.

She outlined a couple of actions that they could pursue if Apacanis believed that the dispute required "deep diving even further" while noting that she "[didn't] think this is ID Theft."

On August 25, 2025, Apacanis responded that they "[would] be deleting due to fraud" and outlined the technical process for doing so.  Defendant says that it approved a deletion of the account "as a business decision intended to address Plaintiff's repeated and continuing allegations of fraud and based on, *inter alia*, the significant passage of time between the date of last activity on the Account and Plaintiff's most recent identity theft claims, the fact that [defendant] could not locate the Vehicle to repossess it for over five years, and, furthermore, that the tradeline would be coming off Plaintiff's credit history relatively soon anyway."  Plaintiff's view is that these were the true reasons for the account deletion, relying on the account note history, which says, "DELETING DUE TO FRAUD," and Apacanis's email indicating the same.

After receiving Apacanis's email, Shoup submitted an Automated Universal Data form requesting that the CRAs delete the account.  Shoup then called plaintiff to confirm that the account had been deleted, and plaintiff responded that he appreciated that.

Plaintiff challenges only the July 2025 investigation.  He and his putative credit expert, Douglas Hollon, opine that defendant's investigation was unreasonable because defendant failed to block the information upon receipt of the FTC identity theft report and failed to investigate the substance of the dispute beyond superficial data matching.

Plaintiff's putative psychological expert, Dr. Jessica Rowe, concludes that "at least ninety percent" of plaintiff's stress stems from the identity theft and credit reporting consequences.  She also diagnosed plaintiff with symptoms consistent with severe trauma, depression, and anxiety.

Plaintiff says that he has suffered actual damages, including homelessness for approximately five years, loss of employment as a residential aid, inability to obtain housing or credit, and severe emotional distress manifested by panic attacks and suicidal ideation.

## DISCUSSION

**I.     Applicable Law**

### A.     Standard of Review

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."). Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." Anderson, 477 U.S. at 256.

6

### B.    Section 1681s-2(b)

"Section 1681s-2(b) of the FCRA 'imposes a duty on furnishers of information to investigate disputed information after receiving notice of a dispute concerning the completeness or accuracy of information from a [CRA] ....'" Burns v. Bank of America, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008) (quoting Jonas v. Int'l Airline Employees F.C.U., No. 03-cv-3374, 2006 WL 1409721, at *6 (S.D.N.Y. May 19, 2006)).  "The FCRA does not require that a furnisher of information delete a consumer's disputed account upon receiving a notice of dispute, but rather, 'simply requires the furnisher of information to investigate and to report information from the investigation.'" Jenkins v. LVNV Funding, LLC, No. 14-cv-5682, 2017 WL 1323800, at *11 (E.D.N.Y. Feb. 28, 2017) (quoting Ritchie v. N. Leasing Sys., Inc., No. 12-cv-4992, 2016 WL 1241531, at *17 (S.D.N.Y. Mar. 28, 2016)).  Thus, a "furnisher's liability under the FCRA turns on whether it conducted a 'reasonable investigation' in response to a dispute notice to determine whether the disputed information can be verified." Severini v. Pa. Higher Educ. Assistance Agency, No. 18-cv-2775, 2020 WL 1467396, at *5 (S.D.N.Y. Mar. 25, 2020) (citation omitted).

"The reasonableness of a furnisher's investigation depends upon the nature and scope of the consumer's dispute to the CRA." Jenkins, 2017 WL 1323800, at *11.  "[W]here a given notice contains only scant or vague allegations of inaccuracy, a more limited investigation may be warranted." Napoleon v. 5665 Sunrise Highway Corp., No. 18-cv-05703, 2021 WL 3469991, at *9 (E.D.N.Y. July 7, 2021) (quoting Seamans v. Temple Univ., 744 F.3d 853, 865 (3d Cir. 2014)).  Although "reasonableness is generally a question for a finder of fact, ... [s]ummary judgment in favor of the furnisher ... is appropriate where no reasonable factfinder could conclude that the investigation was unreasonable." Suluki v. Credit One Bank, NA, 138 F.4th 709, 720 (2d Cir. 2025) (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009)).

7

Damages are available for both negligent and willful violations of the FCRA. Id. "A defendant who *willfully* violates the FCRA is liable for actual damages, punitive damages, and attorneys' fees. 15 U.S.C. § 1681n(a). A defendant who *negligently* violates the FCRA is liable only for actual damages and attorneys' fees. 15 U.S.C. § 1681o." Id.

## II.    Application

Defendant's investigation of the July 2025 dispute notice was objectively reasonable as a matter of law. Upon receiving the dispute notice from Equifax relaying plaintiff's allegation of identity theft, Shoup verified that the first name, last name, middle initial, and Social Security number appearing on the account origination documents all matched the information that plaintiff provided to Equifax in connection with his dispute. Considering the vagueness of plaintiff's dispute letter and FTC identity theft report, Shoup's initial verifications satisfied defendant's obligations under the FCRA. See Weiss v. Bethpage Fed. Credit Union, No. 2:22-cv-1808, 2024 WL 3432030, at *6 (E.D.N.Y. July 16, 2024) (furnisher's investigation based on a "factually sparse ACDV notice from Experian which only contained [p]laintiff's personal and pedigree information" and a generic identity theft dispute code was objectively reasonable where furnisher verified that the information in plaintiff's loan application matched furnisher's records); see also id. at *6 n.7 (furnisher's investigation would have been reasonable even if furnisher had received plaintiff's identity theft and police reports because "neither report would have provided additional information beyond the sparse facts already stated in the ACDV").

But defendant's investigation did not end there: Shoup then compared the origination documents to the documents that plaintiff submitted with his dispute and found numerous probative consistencies. The driver's license number on the title application and in plaintiff's dispute package were the same, and the signatures on the two looked "very similar." The

8

signature on the "Declaration Acknowledging Electronic Signature Process" also looked "very similar" to that on plaintiff's license.  Finally, the ADP pay stub presented to the dealership bore plaintiff's name and contained the same address as that on the other origination documents.

Again, defendant's investigation could have reasonably ended there, but one more time, it went further.  Shoup determined that the first two months of payments were timely made – which, generally speaking, is inconsistent with fraud.[4]  Additionally, she determined that plaintiff had claimed identity theft or fraud several times between June 2020 and June 2023, but never provided defendant with any documentation substantiating those claims.  Something that defendant does not mention, which the Court finds particularly telling, is that plaintiff's 2025 dispute letter indicated that he "[r]ecently" discovered the fraud, even though he had made disputes regarding the account multiple times previously and as early as 2020.

On balance, Shoup, like any reasonable examiner, had numerous reasons to question plaintiff's truthfulness.  To conclude that there had been fraud would have required Shoup to accept plaintiff's word, with no factual support, and with extensive evidence pointing the other way.  Defendant's investigation was sufficient as a matter of law because (1) it was based on the nature of the dispute – a retail installment purportedly taken out by someone other than plaintiff, as described in Equifax's ACDV, plaintiff's dispute letter, and plaintiff's FTC identity theft report – and (2) defendant verified that the information in the origination documents matched what it reported to the CRAs and matched the information that plaintiff provided with his dispute.  See id. at *6; see also Llewellyn v. Asset Acceptance, LLC, No. 14-cv-411, 2015 WL

---

[4] The second payment was apparently reversed in a "transaction correction."  Plaintiff says that this is "common in identity theft and credit fraud cases, as the identity thief will often make the first payment, and even sporadic additional payments, on a fraudulent account in order to continue using the account and benefitting from their fraud."  The Court has considered this argument but can't infer much from it.  Plaintiff does not cite any evidence in support or explain how this assertion, if true, should have altered defendant's investigation.

9

6503893, at *8 (S.D.N.Y. Oct. 26, 2015) (finding investigations reasonable where the furnisher "review[ed] all of its records pertaining to the account" to confirm that the information it reported to the CRAs "matched its internal records"). Although plaintiff denies executing the retail installment contract, "a plaintiff's own affidavit asserting that []he did not sign a [contract], 'without more,' does not demonstrate that the furnisher failed to conduct a reasonable investigation." Weiss, 2024 WL 3432030, at *7 (quoting DeSiena v. Pa. Higher Educ. Assistance Agency, No. 22-1956, 2023 WL 4044109, at *2 (2d Cir. June 16, 2023)). If it did, any consumer could clean up his credit report just by falsely asserting that he had been defrauded.

The Court does not view the discrepancies concerning plaintiff's date of birth and address as red flags. One's address is not integral to one's identity. Plaintiff certainly understands this, as he was homeless for five years. In any event, the address on the retail installment contract and title application matches the address on plaintiff's pay stub provided to the dealership.[5] With respect to the date of birth, although defendant had the wrong birth*day* for plaintiff in its records at the time of the July 2025 investigation (seemingly based on a typo by plaintiff in an earlier dispute), plaintiff's correct birthday was on all of the underlying origination documents.

Additionally, the fact that defendant undertook an additional investigation in August 2025, which resulted in deletion of the account, does not render the original investigation unreasonable. Concluding otherwise would disincentivize furnishers from taking proactive efforts to resolve disputes with consumers. And for what it's worth, the Court is quite certain that none of the documents that plaintiff submitted to Shoup in August had any effect besides

---

[5] The Court can make absolutely nothing of plaintiff's discovery that the allegedly false address "is the subject of a recent lawsuit by a co-owner of that property, alleging fraud against the other co-owner of the property" and "also appears to be occupied by a business called 'First Equity Home,' which is purportedly engaged in 'Credit Intermediation and Related Activities.'"

confirming that plaintiff was not going to stop disputing the account.  The exemplary signatures that plaintiff provided to Shoup in August are indistinguishable from the signatures on the origination documents.  And the new FTC identity theft report doesn't add any context, only confusion – that is, it doesn't provide a new avenue for investigating plaintiff's claim of identity theft, and it doesn't make sense.

That defendant's records indicate that the account was deleted due to fraud is something of a red herring, because "the FCRA is not a strict liability statute."  Suluki, 138 F.4th at 721 (internal quotation marks and citation omitted).  Rather, the FCRA "simply requires a reasonable investigation, and a furnisher is not liable for reporting inaccurate information unless its investigation was not reasonable."  Id.  Thus, even if the account was, in fact, fraudulent, and even if defendant did, in fact, reach that conclusion (as opposed to making a business decision that it wasn't worth the bother to keep fielding plaintiff's disputes), defendant is not liable for reporting the account after its July 2025 investigation because that investigation was objectively reasonable.

Finally, there is no violation of § 1681s-2(b) by failing to mark the account as disputed.  The Court is troubled by plaintiff's significant misdirection on this issue.  First, plaintiff relies on § 1681s-2(b) for the proposition that it "is black-letter law that a furnisher must report an account as 'disputed' if the consumer challenges the debt."  Section 1681s-2(a), *not* (b), sets forth the prohibition that furnishers "may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."  § 1681s-2(a)(3).  Moreover, there is no private right of action to enforce that subsection.  Suluki, 138 F.4th at 719 n.7 (citing § 1681s-2(d) and Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012)).

Second, plaintiff argues that in <u>Lewis v. Experian Info. Sols., Inc.</u>, No. 23-cv-857, 2024 WL 1308705 (E.D.N.Y. Mar. 27, 2024), "the court recognized that the failure to include a 'statement of dispute' constitutes a violation of the duty to assure maximum possible accuracy." But nowhere does <u>Lewis</u> say this. Rather, in <u>Lewis</u>, the court evaluated the obligations of CRAs under § 1681i and held that a CRA "need not 'provide a statement of dispute unless one is provided to it.'" <u>Id.</u> at *8 (quoting <u>Okocha v. Trans Union LLC</u>, No. 08-cv-3107, 2011 WL 2837594, at *8 (E.D.N.Y. Mar. 31, 2011)). Plaintiff may make arguments by analogy to the extent that they can be plausibly made, but plaintiff cannot blatantly mislead the Court as he has attempted to do here.

## CONCLUSION

There is no evidence on which a jury could find that defendant's investigation was unreasonable. Therefore, the Court need not reach the other issues.[6] Summary judgment is granted to defendant and denied to plaintiff. This case is dismissed.

**SO ORDERED.**

*Brian M. Cogan*

U.S.D.J.

Dated: Brooklyn, New York
    April 13, 2026

---

[6] As the Court did not reach the issue of damages, the Rowe report was irrelevant, so the Court did not consider it. <u>See</u> <u>City of New York v. Grp. Health Inc.</u>, 649 F.3d 151, 156 (2d Cir. 2011) (finding that district court did not err in failing to consider an expert report that was irrelevant to its summary judgment decision). By contrast, the Court disregarded the Hollon report because it is unsworn. <u>See</u> <u>Reza v. Khatun</u>, No. 09-cv-233, 2017 WL 3172816, at *2 (E.D.N.Y. July 25, 2017) ("[U]nsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used [on] a motion for summary judgment without additional affidavit support." (Collecting cases)). Notwithstanding, the Hollon report would not have changed the result.